IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LASHANDA JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:21-cv-3105-E |
| | § | |
| REUBEN COX; TAK TRUCKING, | § | |
| INC.; and VICTORY | § | |
| TRANSPORTATION, INC., | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**[1]

Defendants Reuben Cox, TAK Trucking, Inc., and Victory Transportation, Inc. filed a Motion to Strike Plaintiff's Expert Witness Darin Okuda, M.D., *see* Dkt. No. 30 (the "Okuda Motion"), whom Plaintiff Lashanda Johnson has designated as a non-retained expert witness.

In the Okuda Motion, Defendants explain that Johnson "listed Dr. [Darin] Okuda as testifying to the necessity of pain management/orthopedic services and the reasonableness of charges, as well as the necessity of emergency services and the

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

reasonableness of the charges," and that "Dr. Okuda was designated to testify 'that the collision caused Plaintiff's injuries.'" Dkt. No. 30 at 1.

Defendants assert that "Dr. Okuda's opinion that the accident activated Plaintiff's underlying and so-called dormant MS is wholly subjective, conjectural, and contradictory to the objective evidence"; that "[t]here is no foundation or methodology supporting his opinion"; and that, "[b]ecause Dr. Okuda's opinion lacks the requisite foundation for admissibility and is nothing more than the *ipse dixit* of the expert witness, Defendants move to strike his expert testimony from trial." *Id.* at 2.

In support of this request, Defendants contend that "Dr. Okuda's opinion as to causation has no foundation other than his own subjective opinion" and that Dr. Okuda "testified that the accident between Plaintiff and Reuben Cox caused the Plaintiff's Multiple Sclerosis ('MS') to become active" but "admitted there are no peer reviewed articles or studies that address whether this is possible, [and] that there is absolutely no scientific research done to support his theory." *Id.* at 1.

And Defendants argue that Dr. Okuda "also saw only one lesion on her MRI, which he believed was not there prior to the accident, admitting the other lesions were present prior to the accident, and could not say whether the single additional lesion was caused by the accident." *Id.* at 2.

Finally, Defendants complain that "the emergency records from both the hospital and the EMS (which he had not reviewed) state that there had been no loss of consciousness, but Plaintiff told Dr. Okuda that she had lost consciousness," and

that "Dr. Okuda ignored the objective evidence contained in the records, which he testified he never reviewed." *Id.*

Defendants ask that "Dr. Okuda be struck as an expert witness and his testimony excluded at trial." *Id.* at 10.

Johnson filed a response, *see* Dkt. No. 38, and Defendants filed a reply, *see* Dkt. No. 54.

United States District Judge Ada Brown has referred the Okuda Motion to the undersigned United States magistrate judge for a hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 51; *see also Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 346 n.2 (5th Cir. 2020) (the admissibility of an expert report is "a non-dispositive matter," which can be "'referred to a magistrate judge to hear and decide'" under Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A)).

Johnson then filed an Opposed Motion for Leave to File Supplemental Response to Defendants' Motion to Strike Plaintiff's Expert Witness Darin Okuda, M.D. *See* Dkt. No. 64. She explains that she "moves for leave to file a supplemental response because Defendants' motion was late" – that is, "after the time set forth in the scheduling order," where the Scheduling Order provides that the "[d]eadline to object to any other party's expert witness" through "a motion to strike or limit expert testimony" is "6 weeks after disclosure of an expert is made" and where Johnson "designated Dr. Darin Okuda as an expert witness on November 30, 2022," such that

"any motion to strike or limit Dr. Okuda's testimony should have been filed by January 11, 2023." *Id.* at 1-2.

Defendants respond that, while Johnson

initially designated expert witnesses, including Dr. Okuda as a non-retained expert, on November 30, 2022. [Doc. 20], Plaintiff's expert designation deadline was then extended in the First Amended Scheduling Order to April 7, 2023. [Doc. 22]. By agreement, Plaintiff submitted her supplemental and final expert designations on April 21, 2023. [Doc. 25]. Defendants' Motion to Strike Dr. Okuda was filed May 22, 2023, within six (6) weeks of the extended expert designation deadline and Plaintiff's final expert designation. [Doc. 30].

In Plaintiff's designation of Dr. Okuda on November 30, 2022, Dr. Okuda was included in an extensive designation of numerous medical providers under the title of "Plaintiff's Healthcare Providers." See Appendix, Exhibit A (P. 9, 18). In Plaintiff's supplemental designation, Dr. Okuda was again included in an extensive list of Plaintiff's Healthcare Providers." See Appendix, Exhibit B (P. 11, P. 19).

Dkt. No. 69 at 1-2. Defendants contend that they "filed their Motion to Strike Dr. Okuda on May 22, 2023, within six weeks of the last time that Dr. Okuda was designated (April 21, 2023)" and that, "[g]iven that Plaintiff continued to designate expert witnesses and provide opinions and the basis for those opinions, filing a motion to strike Dr. Okuda prior to Plaintiff's final designation would have been premature and a waste of judicial economy." *Id.* at 2 (footnote omitted).

And, Defendants argue, they "will be unfairly prejudiced if the motion is denied on a procedural matter," and Johnson "has not asserted any prejudice if the Court were to consider the merits of Defendants' motion, nor any explanation as to why Plaintiff could have not raised this issue in her Response to the Motion," where she "was aware of the Court's First Amended Scheduling Order when she filed her

response to Defendants' motion on June 12, more than a month ago, and could have made this argument at that time." *Id.* at 2 & n.2.

Finally, Defendants request that, "[s]hould the Court determine that Defendants' motion is untimely, despite being filed within six weeks of the extended expert designation deadline and Plaintiff's supplemental and final designation of experts, … the Court grant leave to file the motion." *Id.* at 3.

Johnson did not file a reply in support of her motion for leave by the July 18, 2023 deadline that the Court set. *See* Dkt. No. 66.

The Court heard oral argument on the Okuda Motion on July 20, 2023. *See* Dkt. Nos. 65 & 72. At oral argument, the Court, without objection, admitted Defendants' Exhibit 1 as a supplement to the appendix in support of their Okuda Motion. And, without objection, Johnson then filed a supplemental appendix to support her response to the Okuda Motion. *See* Dkt. No. 73.

For the reasons explained below, the Court grants Johnson's Opposed Motion for Leave to File Supplemental Response to Defendants' Motion to Strike Plaintiff's Expert Witness Darin Okuda, M.D. [Dkt. No. 64] and grants Defendants' Motion to Strike Plaintiff's Expert Witness Darin Okuda, M.D. [Dkt. No. 30].

### Legal Standards

As another judge in this district recently laid out,

Federal Rule of Evidence 702 governs the admissibility of expert testimony as evidence. Rule 702 permits opinion testimony from a witness "qualified as an expert by knowledge, skill, experience, training, or education" if the expert's knowledge will assist the trier of fact, and

(1) "the testimony is based on sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case."

*Ramos v. Home Depot Inc.*, No. 3:20-cv-1768-X, 2022 WL 615023, at *1 (N.D. Tex. Mar. 1, 2022) (cleaned up).

"In its gatekeeping role, the Court determines the admissibility of expert testimony based on Rule 702 and [*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993),] and its progeny." *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 800 (N.D. Tex. 2018), *aff'd*, No. 3:11-cv-3296-L, 2018 WL 2064126 (N.D. Tex. May 2, 2018). Under Rule 702 and *Daubert*,

[a]s a gatekeeper, this Court must permit only reliable and relevant testimony from qualified witnesses to be admitted as expert testimony. The party offering the expert testimony has the burden of proof, by a preponderance of evidence, to show that the testimony is reliable and relevant.

*Ramos*, 2022 WL 615023, at *1 (cleaned up). And "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Applying this analytical framework under Rule 702 and *Daubert*, a "court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 759 (N.D. Tex. 2021).

"First, an expert must be qualified. Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his knowledge, skill, experience, training, or education." *Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-cv-823-D, 2022 WL 3019795, at *5 (N.D. Tex. July 29, 2022) (cleaned up). "The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Holcombe*, 516 F. Supp. 3d at 679-80 (cleaned up); *accord Arnold v. Allied Van Lines, Inc.*, No. SA-21-CV-00438-XR, 2022 WL 2392875, at *18 (W.D. Tex. July 1, 2022) ("Testimony regarding first-hand, historical perceptions constitutes lay, not expert, opinion testimony."). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Aircraft Holding*, 2022 WL 3019795, at *5 (cleaned up).

And, if the expert is qualified, "Rule 702 charges trial courts to act as gate-keepers, making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. Expert testimony must be both relevant and reliable to be admissible." *Hall v. State*, No. CV H-21-1769, 2022 WL 2990912, at *4 (S.D. Tex. July 28, 2022) (cleaned up).

Expert testimony is relevant if it assists the trier of fact in understanding the evidence or determining a fact in issue. Federal Rule

> of Evidence 401 further clarifies that relevant evidence is evidence that has "any tendency to make a fact more or less probable than it would be without evidence" and "is of consequence in determining the action."

*Id.* (cleaned up). "Relevance depends upon whether [the expert's] reasoning or methodology properly can be applied to the facts in issue." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up). "To be relevant, the expert's reasoning or methodology [must] be properly applied to the facts in issue." *In re: Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022) (cleaned up).

"When performing [the required gate-keeping Rule 702 and *Daubert*] analysis, the court's main focus should be on determining whether the expert's opinion will assist the trier of fact." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019). "Assisting the trier of fact means the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument," but "the helpfulness threshold is low: it is principally ... a matter of relevance." *Id.* at 293-94 (cleaned up).

As to reliability, the required "analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia," and "mandates that expert opinion be grounded in the methods and procedures of science." *Jacked Up*, 291 F. Supp. 3d at 801 (cleaned up). "Expert evidence that is not reliable at each and every step is not admissible." *Jacked Up*, 807 F. App'x at 348 (cleaned up).

"Expert testimony is reliable if the reasoning or methodology underlying the testimony is scientifically valid." *Ramos*, 2022 WL 615023, at *1 (cleaned up).

"Such testimony must be more than subjective belief or unsupported speculation." *Id.* (cleaned up). "In other words, this Court need not admit testimony that is connected to existing data only by the ipse dixit [– that is, an unproven and unsupported assertion resting only on the authority –] of the expert." *Id.* (cleaned up). "[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Holcombe*, 516 F. Supp. 3d at 687 (cleaned up).

"Experts are permitted to rely on assumptions when reaching their opinions," but "those assumptions must have some factual basis in the record and an underlying rationale." *Jacked Up*, 291 F. Supp. 3d at 807-07 (cleaned up). "But there is no requirement that an expert derive his opinion from firsthand knowledge or observation." *Id.* at 801 (cleaned up). More specifically, "[e]xperts are permitted to assume the fact of liability and opine about the extent of damages," and "[a]n expert's reliance on assumptions does not itself make the expert opinion unreliable or inadmissible." *ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*, No. CV H-16-2746, 2018 WL 1877015, at *8 (S.D. Tex. Apr. 19, 2018) (cleaned up).

And Federal Rule of Evidence 703 "permit[s] an expert witness to base his opinion on 'facts or data ... that the expert has been made aware of or personally observed' and to opine [and based his opinion] on inadmissible evidence if 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'" *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 269 & n.10 (cleaned up). More specifically, courts have concluded that, although a party's

damages expert "did not personally observe the facts or data in [another expert's report], as a damages expert, he may rely on hearsay, including other expert reports, in forming his opinions." *ENGlobal*, 2018 WL 1877015, at *11 (cleaned up).

Still, "Rule 702 and *Daubert* require an expert witness independently to validate or assess the basis for his or her assumptions," and "[t]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable," which "requires some objective, independent validation of the expert's methodology." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"Although the basis of an expert's opinion usually goes to the weight and not the admissibility of expert testimony, in some cases the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion. In the words of the Third Circuit, the suggestion that the reasonableness of an expert's reliance on facts or data to form his opinion is somehow an inappropriate inquiry under Rule 702 results from an unduly myopic interpretation of Rule 702 and ignores the mandate of *Daubert* that the district court must act as a gatekeeper." *Jacked Up*, 807 F. App'x at 348 (cleaned up).

"In some circumstances, an expert might be able to rely on the estimates of others in constructing a hypothetical reality, but to do so, the expert must explain why he relied on such estimates and must demonstrate why he believed the estimates were reliable." *Id.* at 348-49 (cleaned up).

-10-

And "[t]he expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"The Court normally analyzes questions of reliability using the five nonexclusive factors known as the *Daubert* factors, [which are: (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community]." *Ramos*, 2022 WL 615023, at *1 & n.11 (cleaned up). "But these factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kim v. Nationwide Mut. Ins. Co.*, No. 3:21-cv-345-D, 2022 WL 2670393, at *5 (N.D. Tex. July 11, 2022) (cleaned up).

"The point of this inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Holcombe*, 516 F. Supp. 3d at 674 (cleaned up).

"The Court also does not need to admit testimony based on indisputably wrong facts." *Ramos*, 2022 WL 615023, at *1 (cleaned up). The United States Court of Appeals for the "Fifth Circuit has recognized that [t]he *Daubert* reliability analysis

applies to, among other things, 'the facts underlying the expert's opinion,'" and "an opinion based on insufficient, erroneous information, fails the reliability standard." *Jacked Up*, 291 F. Supp. 3d at 802 (cleaned up). "And although the *Daubert* reliability analysis is flexible and the proponent of the expert evidence need not satisfy every one of its factors, the existence of sufficient facts ... is in all instances mandatory." *Id.* (cleaned up).

But, "[i]n conducting its analysis, the Court focuses on the reasonableness of the expert's approach regarding the matter to which his testimony is relevant and not on the conclusions generated by the expert's methodology." *Ramos*, 2022 WL 615023, at *1 (cleaned up). A motion to exclude is not properly based on an "objection that goes to whether [the proffered expert's] opinion is correct, not whether it is reliable," where "[t]he proponent need not prove to the judge that the expert's testimony is correct, but," rather, "by a preponderance of the evidence that the testimony is reliable." *Aircraft Holding*, 2022 WL 3019795, at *8 (cleaned up).

And, "[e]ven when a court rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable." *United States v. Hodge*, 933 F.3d 468, 477 (5th Cir. 2019), as revised (Aug. 9, 2019) (cleaned up). And, so, "[w]hen the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *ENGlobal*, 2018 WL 1877015, at *8 (cleaned up).

Neither can the Court accept arguments that "urge[] the Court to establish an unattainable goalpost, essentially arguing that each item of expert testimony is unreliable insofar as it fails to conclusively prove [the expert testimony's proponent's] theory of its case or an element of a claim or defense," and thereby "confus[e] admissibility with sufficiency, and sufficiency with certainty." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up). That "is not the standard for admissibility," or "even the standard for success on the merits," and "[i]t is not the Court's role, in the context of a *Daubert* motion, to judge the conclusions that an expert's analysis generates; the ultimate arbiter of disputes between conflicting opinions is the trier of fact." *Id.*

"If, however, there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered, the court may exclude the testimony as unreliable." *Kim*, 2022 WL 2670393, at *5 (cleaned up). For example, "the Court may exclude [an expert witness's] analysis if the studies that he relies on are so dissimilar to the facts presented that [the expert witness's] opinions cannot be sufficiently supported by the studies." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up).

"But the notion that expert testimony is only admissible to the extent that it is based on studies of identical individuals under identical circumstances would not only turn the 'flexible' inquiry envisioned under Rule 702 on its head, but such rigid constructions of reliability and relevance would defeat the very purpose of expert testimony: to help the trier of fact understand and evaluate the evidence." *Id.* at 676-77 (cleaned up). And, generally, an opposing party's "doubts about the bases for [an

-13-

expert's] opinions do not render his opinions so unsupported as to create 'too great an analytical gap' between the evidence he relies on and his opinions." *Id.* at 675 (cleaned up).

The "evidentiary gates [provided by Rule 702 and *Daubert*] exist to keep out error that may impermissibly affect the jury" and "to protect juries from unreliable and irrelevant expert testimony." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 264, 268. But "[t]he court's inquiry is flexible in that [t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up).

And, "[p]articularly in a jury trial setting, the court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role – the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration. Thus, [w]hile the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, the rejection of expert testimony is the exception rather than the rule." *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (cleaned up).

And "[t]he Fifth Circuit has noted that [a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration," and, "[a]ccordingly, [v]igorous cross-examination, presentation of contrary evidence,

and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Ramos*, 2022 WL 615023, at *3 (cleaned up).

## Analysis

### I.   Defendants' motion is not untimely but, in any event, will be allowed.

Johnson disclosed Dr. Okuda in both her original and amended expert disclosures. *See* Dkt. Nos. 20 & 25. And the First Amended Scheduling Order does not specify that a motion to strike or limit must be filed after the first of two times that a party discloses an expert. *See* Dkt. No. 22 at 2.

But, even if Defendants did file their Okuda Motion late, the Scheduling Order (later amended by the First Amended Scheduling Order) provides that it "controls the disposition of this case unless it is modified by the Court on a showing of good cause and by leave of court. Fed. R. Civ. P. 16(b)(4)." Dkt. No. 7 at 9; *see* Dkt. No. 22 at 8 ("The above notwithstanding, all unmodified provisions of the Court's March 28, 2022 Scheduling Order (Doc. 7) remain in effect."). And,

> [t]o meet the good cause standard, parties must show that, despite their diligence, they could not reasonably have met a deadline (or deadlines) in the scheduling order.
>     In exercising the authority to determine whether to modify a scheduling order for good cause under Federal Rule of Civil Procedure 16(b)(4), the four relevant factors are: (1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice.
>     While [t]he court considers the four factors holistically and does not mechanically count the number of factors that favor each side, [t]he

-15-

absence of prejudice to the nonmovant and inadvertence of the party seeking the modification are insufficient to demonstrate "good cause."

*Stancu v. Hyatt Corp./Hyatt Regency Dallas*, No. 3:18-cv-1737-E-BN, 2021 WL 1610105, at *1-*2 (N.D. Tex. Apr. 26, 2021) (cleaned up).

Defendants offer a persuasive explanation for the timing of their filing of the Okuda Motion, even if it was untimely under a correct reading of the Scheduling Order or the First Amended Scheduling Order. *See* Dkt. No. 69 at 1-2.

Johnson suffers no prejudice other than facing the possibility of Dr. Okuda exclusion. And Defendants argue that their motion "goes to the merits and substance of Dr. Okuda's proffered unreliable opinions and the lack of any foundation or methodology," and "[t]o deny the motion solely due to a procedural matter would unfairly prejudice the Defendants, would be in disregard of the Court's gatekeeper function, and would potentially lead to an improper verdict, as the jury may place greater weight on the testimony of Dr. Okuda simply because he is an expert witness, even though he has no supporting foundation and his opinion is unreliable." *Id.* at 3.

Finally, the parties have fully briefed the Okuda Motion, and Johnson could have raised this untimeliness issue during the original briefing.

Under these circumstances, the Court GRANTS Johnson's Opposed Motion for Leave to File Supplemental Response to Defendants' Motion to Strike Plaintiff's Expert Witness Darin Okuda, M.D. [Dkt. No. 64] but rejects her request to deny the Okuda Motion as untimely – determining that, even if it was filed after the deadline

that the Court's operative scheduling order set, Defendants have shown good cause to, and will be permitted to, file it out of time.

## II.    Johnson did not establish Dr. Okuda's causation opinion's reliability.

As explained above, the Court should not, in its gatekeeping role under Rule 702 and *Daubert*, exclude a proffered expert witness's opinion or testimony because (1) it is not correct; (2) it contradicts other expert testimony or relies on a sets of facts that conflicts with that relied on by contradictory expert testimony, even if that contradictory expert testimony has been found to be reliable; or (3) it does not conclusively prove the proponent's theory of its case or an element of a claim or defense.

But the party offering the expert testimony bears the burden of proof, by a preponderance of evidence, to show that a qualified expert's testimony is relevant (that is, the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, and the expert's reasoning or methodology properly can be applied to the facts in issue) and reliable (that is, the testimony is based on sufficient facts or data and is the product of reliable principles and methods).

The Court should exclude expert testimony where (1) the expert cannot bring to the jury, on a matter of relevance, more than the lawyers can offer in argument; (2) the expert testimony is based only on subjective belief or unsupported speculation or is connected to existing data only by the unproven assertion of the expert, resting

solely on the expert's authority; (3) there is simply too great an analytical gap between the basis for the expert opinion and the opinion proffered (such as if the studies that the expert relies on are so dissimilar to the facts presented that the expert's opinions cannot be sufficiently supported by the studies); (4) the expert testimony is based on indisputably wrong or erroneous or insufficient facts; (5) the proponent fails to provide some objective, independent validation of the expert's methodology; (6) the source on which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion; or (7) the expert relies on assumptions that have no factual basis in the record or no underlying rationale.

Defendants assert that, although "Dr. Okuda was designated to testify 'that the collision caused Plaintiff's injuries,'"

> Dr. Okuda has no basis or foundation for his opinion. There are no research or peer-reviewed articles which support his opinion. He could not cite to a single authority which supported his opinion.
>
> Instead, he has only his own subjective, "intuitive" experience. Without any evidence or objective support, he speculates that it could be Plaintiff's emotional trauma that caused her MS to become active, or it could be the result of the accident itself. His opinion is nothing more than the *ipse dixit* of the expert witness. In other words, Dr. Okuda can couch his opinion in a cloak of qualifications but cannot make his opinion credible and reliable. Reliability and validity do not require certainty but must be demonstrated by evidence that the knowledge is more than speculation. *Daubert*, 509 U.S. at 590.
>
> In fact, his testimony shows that he did not see any evidence of acute trauma or injury in the MRI's, he did not review the ER records for either the hospital or the EMS in which Plaintiff advised she did not lose consciousness, and he admitted that only one lesion appears to be post-accident. He further had not seen records discussing symptoms Plaintiff had been experiencing for years prior to the accident. His opinion is not only not based on any reliable foundation, he did not consider evidence that is contrary to his subjective opinion.

....

Dr. Okuda's opinion does not merely rely on an unreliable foundation, there is no foundation on which he relies at all beyond his own personal opinion. There is no methodology or reliance on any scientific studies. He simply makes a conclusory leap and states his own subjective opinion which he admits is not supported by any authority, study, or test of any kind.

Again, the courts, including the United States Supreme Court, have rejected the type of *ipse dixit* testimony put forth by Dr. Okuda. It is the burden of the party offering an expert to prove by a preponderance of the evidence that the expert's proffered testimony satisfies the requirements of Rule 702. *See, e.g.*, *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002). Because Plaintiff cannot meet the Rule 702 burden with respect to Dr. Okuda, and because the proposed testimony is fundamentally flawed, it must be excluded.

Dkt. No. 30 at 8-9 (cleaned up).

Johnson responds that she was injured as a result of the collision that is the subject of this lawsuit and that

at the scene Ms. Johnson was unable to stand and reported odd sensations in her feet and ringing in her ears. She went to the ER, and followed up with various medical providers, including a chiropractor, several neurologists, an ophthalmologist, and even the Mayo Clinic, for her neck pain, low back pain, balance issues, blurred vision, and headaches. During the course of her treatment she was diagnosed with Multiple Sclerosis ("MS"), and ultimately referred to Darin Okuda, M.D., a board-certified neurologist at UT Southwestern Medical Center in Dallas and a pioneer in the field of MS, including an early asymptomatic form known as Radiologically Isolated Syndrome or "RIS." *See* Okuda Deposition and Curriculum Vitae (Appdx Tab A, p. 009-010, 132). RIS can accurately be described as asymptomatic or benign MS. It is characterized by the presence of MS lesions in the brain and spinal cord, but an absence of symptoms. The diagnostic criteria for RIS is named the "Okuda criteria," after Dr. Okuda. *See* Appdx Tab A, p. 009; and Conte Deposition, Appdx Tab B, p. 165.

According to Dr. Okuda, the collision made the basis of this suit caused Ms. Johnson's RIS (benign MS) to become symptomatic MS.

....

-19-

Defendants take the position that it cannot be causally proven that a single trauma event caused the acceleration of Ms. Johnson's MS symptoms, and thus, they seek to exclude Dr. Okuda's opinions as foundationally unreliable or speculative. But the subject of scientific testimony is not required to be "known" to a certainty; as arguably, there are no certainties in science. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993).

Dr. Okuda reviewed MRIs of Ms. Johnson's brain and relied on the descriptions Ms. Johnson provided of her symptoms after the collision, as compared to before, and his own objective examination of her physical limitations, to conclude based on his extensive experience in the research and treatment of MS, that the trauma coupled with the emotional strain of the crash caused her otherwise benign MS symptoms to appear and progress. Appdx Tab A, p. 121-123. As such, this Court should conclude that Dr. Okuda's knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, and admit his causation testimony at trial.

....

Although Rule 702 does not require absolute certainty, it does mandate that the proffered knowledge be based on "good grounds." *Larson v. Matter*, No. 3:06-CV-1496-D, 2008 WL 3876015, at *2 (N.D. Tex. Aug. 18, 2008). "The testimony must constitute more than subjective belief or unsupported speculation." *Id.* By reviewing Ms. Johnson's brain MRI studies, physically examining Ms. Johnson and making an objective assessment of her limitations, and considering her descriptions of the physical symptoms she experienced only after the collision; and by providing the science behind his evaluation of the cause of Ms. Johnson's condition going from benign RIS to symptomatic MS, Dr. Okuda has set forth "good grounds" for his causation opinions. Additionally, a critical component of Dr. Okuda's testimony, the mechanism by which trauma can cause an asymptomatic lesion to become symptomatic, is supported by objective imaging findings. As such, this Court should conclude that Dr. Okuda's knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, and admit his testimony at trial.

Dkt. No. 38 at 3-6, 25.

Defendants reply that they

do not dispute Dr. Okuda's expertise or that the Plaintiff has MS. Contrary to Plaintiff's statement that the "Defendants take the position

that it cannot be causally proven that a single trauma event caused the acceleration of Ms. Johnson's MS symptoms," Defendants argue that Plaintiff has not offered any reliable expert testimony to establish it. Moreover, Plaintiff's Response fails to show that Dr. Okuda's opinions are anything more than the mere *ipse dixit* of the expert witness.

Plaintiff's Response contains a number of references to Dr. Okuda's deposition. The cited testimony does nothing more than prove Defendants' point: Dr. Okuda has no support for his opinion beyond his own subjective experience. He concludes "based on a reasonable degree of medical probability" that the accident caused Plaintiff to become symptomatic but does not offer any foundation for that opinion. Plaintiff later cites to Dr. Okuda's testimony wherein he states that based on his "professional opinion, the trauma actually triggered things or caused her MS to actually be worse," but again, there is no support for this statement offered.

Likewise, Plaintiff cites to Dr. Okuda's opinion that the mild, moderate, or severe impact of the accident is irrelevant since it "doesn't mean that that is the experience for the person who was involved in it" is more unsupported and speculative expert opinion. Nothing is offered to support these statements. It is merely more proof that Dr. Okuda's opinion lacks any foundation.

....

Plaintiff cites to several authorities for the proposition that an expert's opinion can be formed based on oral history alone, this is not an accurate statement. In fact, one authority to which Plaintiff cites supports Defendants' argument: *Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987). In that case, the Fifth Circuit did say that "a patient's oral history is generally considered reliable," but prefaced that statement with "Although." The Fifth Circuit then noted that the history at issue "lacked reliability because it was incomplete in a critical area." *Id.* at 423. The Fifth Circuit noted that the doctor's opinion in reliance on the history "simply lacks the foundation and reliability necessary to support expert testimony." *Id.* at 424. "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible," and affirmed the striking of the expert witness. *Id.*

So, too, was Plaintiff's oral history lacking in a critical area, or more accurately, contradicting evidence which was developed prior to Plaintiff filing suit. The emergency records expressly stated that there had been no loss of consciousness, but Plaintiff contradicted these records and provided a false medical history by stating that she had lost consciousness. Further, the records reflect Plaintiff had experienced MS symptoms prior to the accident, which Dr. Okuda likewise was not

aware of. Dr. Okuda's reliance on this, without consideration of evidence made at the time of the accident, shows a lack of a reliable foundation. ….

Plaintiff offers a number of arguments in an attempt to obfuscate the fact that Dr. Okuda's opinion lacks any reliable foundation or methodology. ….

Plaintiff attempts to cite to Dr. Okuda's reliance on Dr. Mohr's study as providing a foundation for his opinion that the accident caused Plaintiff's MS to trigger. However, Dr. Okuda mentions Dr. Mohr only twice in his deposition. In both instances, he is merely referring to Dr. Mohr's study that "emotional stress" may cause MS to worsen. *See* Plaintiff's Appx. 000078, 000095. Dr. Okuda admitted that such stress could come from any source, a "variety of things ... a change from a brand name drug to a generic drug that's forced upon you by an insurance company. It could be some social stressors, seeing your son get sent to prison, right." *Id.*, 000122. Nowhere does Dr. Okuda state that Dr. Mohr's study involved any trauma causing MS to worsen.

Plaintiff then attempts to buttress Dr. Okuda's opinion by offering testimony of Defendants' expert witness and literature and studies on which Dr. Okuda did not rely. Plaintiff even admits that "[a]lthough the colored DTI image from Dr. Gonzalez-Toledo's report **was not used by Dr. Okuda in forming his opinion**, it provides objective support for the basis of his testimony." In other words, Plaintiff's counsel has purportedly located a foundation for Dr. Okuda's opinions, which Dr. Okuda did not rely on.

A party cannot buttress the opinion of an expert witness after the fact. When an expert does not rely on cited literature to form his opinions, such "after-the-fact" selected literature cannot support "preexisting conclusions." *Thelen v. Somatics, LLC*, 2023 WL 3947954, at *3 (M.D. Fla. June 12, 2023) (striking expert due to lack of reliable foundation). Further, "choosing one side of the existing medical and scientific literature on a contested point, and citing one's education, training, and experience as the basis for the choice, is not sufficient to demonstrate the admissibility of a general causation opinion." *Id.* at *4. "Coming to a firm conclusion first and then doing research to support it is the antithesis of [the scientific] method." *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502-03 (9th Cir. 1994).

Evidence an expert did not consider cannot rescue the expert's opinion from inadmissibility "by filling its analytical gaps." *Hirchak v. W.W. Grainger, Inc.*, 980 F.3d 605, 609 (8th Cir. 2020). Likewise, a party's attempt to bolster an expert's causation opinion with materials corroborating is insufficient to establish a reliable foundation or

methodology because the expert "simply did not rely upon those items in formulating his opinion." *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1209 (8th Cir. 2000).

So, too, should Plaintiff's attempt to bolster her expert's opinion with materials that would "fill in the gaps" in his foundation. Dr. Okuda did not rely on any of the cited materials in Plaintiff's Response, and it goes without saying that he did not rely on Defendants' expert's testimony in forming his opinions.

As shown in Defendants' Motion, Dr. Okuda admitted that all but one of the lesions on Plaintiff's MRIs pre-dated the accident and also agreed that the lesions do not show traumatic brain injury due to the accident. He agreed that "I don't see any evidence" of acute trauma in her MRIs. He also agreed there is "not any scientific research" that establishes an accident can make neurological symptoms worse. Dr. Okuda's opinions are wholly lacking in foundation or methodology, and Plaintiff's attempt to bolster and fill in the gaps in Dr. Okuda's foundation and methodology should be rejected.

Dkt. No. 54 at 1-5.

Defendants' counsel confirmed at oral argument that Defendants challenge only the reliability of Dr Okuda's causation opinion – that "the collision made the basis of this suit caused Ms. Johnson's RIS (benign MS) to become symptomatic MS," Dkt. No. 38 at 4 – and not its relevance or his qualifications.

Defendants challenge Dr Okuda's causation opinion's admissibility under Rule 702 primarily because, they assert, it is not based on any reliable foundation and secondarily because Dr. Okuda did not review and consider much of Johnson's medical record or evidence in this case.

As the Court's discussions with counsel at oral argument made clear, the parties' disagreements as to reliability boil down to two competing positions.

-23-

Johnson asserts that her well-qualified treating physician, who is a leader in the field of MS research and treatment, can properly testify to his opinion that trauma from the collision caused a change in the clinical trajectory of Johnson's MS based on his general knowledge of what both MS and trauma each do to a person's physiology as applied to his physical examination of Johnson and his considering her oral descriptions of her symptoms after the collision, along with a review of some MRIs of her brain. Johnson's counsel noted at oral argument that neither she nor Dr. Okuda is trying to prove what causes MS and that there is no dispute that Johnson had at least benign or asymptomatic MS before the collision.

Johnson points to a Fifth Circuit decision that reversed a trial court's excluding, on reliability grounds, a doctor's testimony that a syringe caused a patient's salmonella infection, where

> [t]he final consideration under *Daubert* is whether Dr. Coco's hypothesis is generally accepted in the relevant scientific community. Dr. Coco based his opinion on how Pipitone contracted salmonella in large part on accepted medical knowledge of the ways in which salmonella functions as an organism and how it infects humans. Dr. Coco's elimination of various alternative causes, as discussed more thoroughly below, such as infection through the gastro-intestinal ("GI") tract or the blood stream, were based on generally accepted diagnostic principles related to these conditions. Dr. Coco personally examined Pipitone in the hospital and found him to be lacking the symptoms that a physician would expect to find if salmonella had been introduced into the body through one of these alternative routes.
>
> In a case such as this one, however, it is appropriate for the trial court to consider factors other than those listed in *Daubert* to evaluate the reliability of the expert's testimony. In this case, the expert's testimony is based mainly on his personal observations, professional experience, education, and training. The trial court, therefore, must

probe into the reliability of these bases when determining whether the testimony should be admitted. ….

Likewise, in *Kumho Tire*, the Court explained that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." Accordingly, this circuit has upheld the admission of expert testimony where it was based on the expert's specialized knowledge, training, experience, and first-hand observation while supported by solid evidence in the scientific community.

As stated before, Biomatrix does not dispute Dr. Coco's opinion that the Synvisc syringe used by Pipitone, if contaminated with salmonella, would have caused his infection. Biomatrix takes issue only with Dr. Coco's finding that, in light of all of Dr. Coco's knowledge of and experience with salmonella and how people do and do not contract it, as well as his observation of Pipitone, the Synvisc syringe was the source of the contamination.

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 246-47 (5th Cir. 2002) (cleaned up).

Defendants, on the other hand, assert that medical science does not know what causes MS and that there is no medical or scientific consensus that a single event trauma can cause the acceleration of MS symptoms and that Dr. Okuda's strong belief based on his qualifications and experience that a single trauma from the collision in this case caused the acceleration of Johnson's MS symptom is not the product of reliable scientific principles and methods or based on sufficient facts or data, as required to meet Rule 702's reliability requirement.

Defendants point to the en banc Fifth Circuit's explanations that

the party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable. This requires some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient. The proponent need not prove to the judge

-25-

> that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable.
>
> In sum, the law cannot wait for future scientific investigation and research. We must resolve cases in our courts on the basis of scientific knowledge that is currently available. The inquiry authorized by Rule 702 is a flexible one; however, a scientific opinion, to have evidentiary relevance and reliability, must be based on scientifically valid principles.

*Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc) (cleaned up).

At oral argument, Defendants' counsel explained that they are not seeking to exclude Dr. Okuda's causation testimony by challenging the basis or correctness of his opinion or on whether or not any clinical facts or medical records on which he relies are correct. Rather, Defendants challenge Dr. Okuda's causation opinion's admissibility because he did not rely on any data at all to support his opinion that has no scientific support.

After carefully considering the parties' briefing, arguments, and supporting materials, the Court finds that this scenario is not like the one in *Pipitone*. The dispute is not over whether this particular trauma was or was not an instance of an accepted and known source of MS symptom acceleration, with everyone agreeing that, as long as it was, it would have caused a change in the clinical trajectory of Johnson's MS.

Rather, this is an instance in which Dr. Okuda believes that Johnson's MS symptoms worsened shortly after the collision and that, because "MS attacks the myelin sheath, the protective coating on the axon" in a brain cell (where "[t]he axon

is the wire that a neuron uses to communicate to other neurons"), "a patient with MS is more susceptible to injury because the myelin has been damaged and bare axons may be present," and there here, "the trauma actually triggered things or caused her MS to actually be worse." Dkt. No. 38 at 8-11.

But, as in *Moore*, Dr. Okuda "cited no scientific support for this theory. None of *Daubert*'s factors to assess whether the opinion was based on sound scientific principles [is] met. [Dr. Okuda's] theory [has] not been tested; the theory [has] not been subjected to peer review or publication; the potential rate of error [has] not been determined or applied; and the theory [has] not been generally accepted in the scientific community." *Moore*, 151 F.3d at 279.

Dr. Okuda points to his own clinical experience and that he believes, based on his experience and expertise, that it is intuitive that traumas causes acceleration of MS symptoms. But, at his deposition, Dr. Okuda "could cite no scientific support for his conclusion," at least of the kind that Rule 702's reliability requirement demands for admitting expert testimony before a jury, and, "[u]nder the *Daubert* regime, trial courts are encouraged to exclude such speculative testimony as lacking any scientific validity." *Id.*

And Johnson's counsel cannot bolster Dr. Okuda's unsupported causation opinion by pointing to the opinion of another expert witness on which Dr. Okuda did not rely or on scientific literature that counsel collected only in response to Defendants' Okuda Motion – none of which Dr. Okuda testified that he reviewed or

-27-

relied on. *See generally Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1209 (8th Cir. 2000).

The Court determines that "the 'analytical gap' between Dr. [Okuda's] causation opinion and the scientific knowledge and available data advanced to support that opinion [is] too wide." *Moore*, 151 F.3d at 279.

As Defendants' counsel acknowledged at oral argument, no one doubts Dr. Okuda's qualifications or that he strongly believes in his opinion that trauma from collision cause Johnson's MS symptoms to worsen or, specifically, caused Johnson's benign or asymptomatic MS to become symptomatic MS. And Dr. Okuda's belief that a single event trauma can cause MS symptoms to accelerate may someday be scientifically proven, perhaps by Dr. Okuda himself.

But, on this record, on the basis of scientific knowledge that is currently available, Dr. Okuda's causation opinion is based only on subjective belief or unsupported speculation and connected to existing data only by Dr. Okuda's unproven assertion, resting solely on his authority, and so Johnson, as the proponent of Dr. Okuda's expert causation opinion, has failed to provide some objective, independent validation of Dr. Okuda's methodology for arriving at this opinion.

## Conclusion

For the reasons explained above, the Court grants Johnson's Opposed Motion for Leave to File Supplemental Response to Defendants' Motion to Strike Plaintiff's Expert Witness Darin Okuda, M.D. [Dkt. No. 64] and grants Defendants' Motion to

Strike Plaintiff's Expert Witness Darin Okuda, M.D. [Dkt. No. 30] and excludes Dr. Darin Okuda's causation opinion under Federal Rule of Evidence 702 and any related testimony of that opinion at trial.

      SO ORDERED.

      DATED: July 21, 2023

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE