**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| LASHANDA JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-03105-E |
| | § | |
| REUBEN COX et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendants' Motion for Partial Summary Judgment, which seeks dismissal of Plaintiff Johnson's (i) direct negligence claims against TAK Trucking, Inc. and Victory Transportation Inc. and (ii) gross negligence claims against all Defendants. (ECF Nos 27; 28). Johnson has responded. (ECF No. 42). Defendants have replied. (ECF No. 53). Having carefully considered the motions; the Parties' briefing; appendices; and the applicable law, for reasons that follow, the Court grants Defendants' Motion for Partial Summary Judgment.

### I.   BACKGROUND

#### A.  Rueben Cox, Victory Transportation Inc., and TAK Trucking Ink.

This case arises from a dispute over a motor vehicle accident. Rueben Cox was first commercially licensed to drive between 2009 and 2011. (ECF No. 29 at 5). Cox has been a commercial truck driver for about 14 years. (ECF No. 29 at 12). Cox trained in operating commercial vehicles through a school that ABC Trucking operated; Cox passed the course on his first attempt. (ECF No. 29 at 10-11). Cox's normal driver's license has never been suspended or revoked. (ECF No. 29 at 6). Prior to this incident, Cox has never received any ticket as a

commercial driver. (ECF No. 29 at 7). Cox's last known ticket was in 1989 in Florida. (ECF No. 29 at 6). Some evidence shows Cox may have received a speeding ticket in 2016 while operating his personal vehicle, but Cox could not recall such a ticket and no corresponding documentary evidence exists in the summary judgment record. (ECF No. 29 at 8-9). Cox confirmed he was convicted of a crime twenty or thirty years ago. (ECF No. 29 at 14). Cox began driving for TAK in August 2019. (ECF No. 29 at 13). A more experienced, supervisory driver—Mr. Hibbert—rode along with Cox for about two months after he began work at TAK. (ECF No. 29 at 15).

Victor Zembel is a former commercial driver and current owner of Victory. (ECF No. 29). Victory relied on TAK to hire drivers and qualify them to drive. (ECF No. 35-36). Prior to hiring Cox, Zembel visited Cox at his apartment, obtained Cox's medical card, obtained Cox's driving license, and submitted the same to TAK. (ECF No. 29 at 38). Zembel understood that TAK performed a background check and confirmed his insurance was approved. (ECF No. 29 at 38-39). Zembel testified that TAK took Cox's driver application, verified the information, checked his driving history, reviewed his safety performance, checked his prior employers, and performed a pre-employment drug test. (ECF No. 29 at 39). Zembel thought TAK would give Cox a driving test. (ECF No. 29 at 33-34).

Aldin Cutahija is the corporate representative of TAK. (*See* ECF No. 29 at 44-50). Cutahija has a commercial driver's license and safety licenses, and Cutahija works as TAK's operations manager. (ECF No. 29 at 45-46). Cutahija testified that Victory was a fleet owner within TAK— that is, a contractor within TAK. (ECF No. 29 at 47). Cutahija testified that Victory had multiple trucks with TAK: "[Victory] would hire the drivers. [TAK] would . . . run the background and . . . [motor vehicle record] and PSP on the drivers and tell [Victory] if the driver is acceptable within our company." (ECF No. 29 at 47). Cutahija testified TAK did not road test Victory's drivers.

---

MEMORANDUM OPINION AND ORDER                                              Page **2** of **20**

(ECF No. 29 at 48). However, Cutahija testified TAK had a "minimum requirement of two years" driving experience and "clean" MVRs— "[meaning] no suspensions or nothing major in the last four years." (ECF No. 29 at 49).

TAK performed a safety test with Cox. (ECF No. 43 at 20-23). TAK tracked its drivers— including Cox—through logbooks and speed tracking; those alerted TAK if a driver was speeding. (ECF No. 29 at 51). If an alert occurs, TAK would talk to the driver, figure out what the issue was, and give them a verbal warning. (ECF No. 29 at 51). If the alerted conduct continued, TAK would bring the driver in to write them up, and give them another warning. (ECF No. 29 at 51). If the alerted conduct continued after those warnings, the driver would be terminated. (ECF No. 29 at 51). Although TAK had this disciplinary process, TAK did not have a chance to discipline Cox because Victory discharged him before disciplinary action could take place. (ECF No. 29 at 50).

### B. September 20, 2019 Collision

On September 20, 2019, Cox was driving a commercial vehicle with Mr. Hibbert riding along as a passenger. (ECF No. 29 at 15, 17). Cox was driving through a "construction area . . . [t]raffic merging from the far left lane to the far right line, almost like as if you're getting off to exit. Stop-and-go traffic." (ECF No. 29 at 17). The accident occurred during rush hour, and Cox testified the fastest he believed he travelled during rush hour was no more than 20 miles an hour. (ECF No. 29 at 18). Johnson testified the accident occurred after 5:00 p.m. (ECF No. 29 at 58). Cox testified:

> [A]t this specific time, it was a white vehicle in the front of the vehicle that I had the -- the incident with. They took off. And then, I guess, the car in front of them stopped, and then [Johnson] stopped fast. And then [Johnson] stopped fast, and I'm just hitting my brakes, just taken just so it happened just like that.

(ECF No. 29 at 17). Johnson testified all of the vehicles around her, including the vehicle in front of her, were stopped. (ECF No. 29 at 60-61). Cox was not using his cell phone. (ECF No. 29 at

19). Cox estimated he was about three feet behind Johnson's vehicle before the impact occurred. (ECF No. 29 at 20). Cox braked before the impact. (ECF No. 43 at 13). Cox admitted that he did not allow enough room to stop and that the CDL manual trained him to move to the shoulder to avoid an accident when there is not enough room to stop. (ECF No. 29 at 21-23).

### C. Procedural History

As removed and amended, Johnson pleads:

> This lawsuit arises out of a motor vehicle collision that occurred on Friday, September 20, 2019 at or near Interstate 20 and Helms Trails within the city limits of Forney, Kaufman County, Texas. Plaintiff Lashanda Johnson was operating her vehicle eastbound on Interstate 20. Kristina Dodd was driving ahead of Plaintiff in the same lane and came to a sudden stop for traffic ahead. Defendant Reuben Cox was operating his 18-wheeler behind Plaintiff's vehicle in the same lane and headed in the same direction. Defendant Reuben Cox was in the course and scope of his employment with and operating under the Federal Motor Carrier authority of Defendant TAK Trucking, Inc. Defendant Reuben Cox failed to slow and/or stop, colliding hard with the back of Plaintiff's vehicle, pushing her into Defendant Kristina Dodd. As a result of the collision, Plaintiff was injured and continues to suffer injuries and damages from this incident.

(ECF No. 36 at 2). Against Reuben Cox, Johnson asserts claims of negligence and gross negligence. (ECF No. 36 at 2-4). Against Defendant TAK Trucking, Inc., Johnson asserts claims of (i) negligent entrustment; (ii) respondeat superior; (iii) negligence; (iv) gross negligence. (ECF No. 36 at 4-5). Against Defendant Victory Transportation, Inc., Johnson asserts claims of (i) negligent entrustment; (ii) respondeat superior; (iii) negligence; (iv) gross negligence. (ECF No. 36 at 5-7). As against Defendants TAK and Victory, Johnson's claims for negligence and gross negligence include allegations of negligent "qualifying, hiring, training, retaining, and/or supervising Defendant Rueben Cox." (ECF No. 36).

Defendants have moved for summary judgment on the respective gross negligence claim(s) and direct negligence claims of negligent entrustment, negligent supervision, negligent retention,

negligent hiring, negligent qualification, and negligent training. (ECF No. 28 at 6-7). Having been fully briefed, Defendants' Motion for Summary Judgment is ripe for consideration.

## II. SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. A court must view all evidence and draw all reasonable inferences in the light most favorable to a party opposing a summary judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A court "may not make credibility determinations or weigh the evidence" in ruling on the motion. *Reeves*, 530 U.S. at 150; *Anderson*, 477 U.S. at 254-55. Moreover, the evidence the non-movant provides must raise "more than . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The evidence must be such that a jury could reasonably find in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The moving party bears the initial burden of showing the court there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party with the burden of proof on an issue "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When, as here, a nonmovant bears the burden of proof, the movant may demonstrate it is entitled to summary judgment either by (1) *submitting evidence that negates the*

*existence of an essential element of the nonmovant's claim or affirmative defense*, or (2) *arguing there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. Celotex*, 477 U.S. at 322–25 (emphasis added). There is "no genuine issue as to any material fact [if] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Once the movant has made this showing, the burden shifts to the nonmovant to establish there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Celotex*, 477 U.S. at 324. "[C]onclusory allegations, speculation, and unsubstantiated assertions" will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). A court "resolve[s] factual controversies in favor of a nonmoving party . . . only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

"A party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). The Fifth Circuit has explained:

> The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. . . . "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).

*Ragas*, 136 F.3d at 458. Regarding assertions of fact, Federal Rule of Civil Procedure 56 states:

[i]f a party fails ... to properly address another party's assertion of fact as required by Rule 56(c), the court may ... (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(2)-(3).

## III. ANALYSIS

A negligence claim requires proof of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001) (citing *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998)). "An employer can be liable for negligence if its failure to use due care in hiring, supervising, or retaining an employee creates an unreasonable risk of harm to others." *Bartolowits v. Wells Fargo Bank, N.A.*, No. 3:13-CV-4666-D, 2017 WL 36287, at *2 (N.D. Tex. Jan. 3, 2017) (quoting *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 287 (Tex. App.—Dallas 2015, no pet.)) (citations omitted). The Supreme Court of Texas "has yet to rule definitively on the 'existence, elements, and scope of [causes of action for negligent retention and supervision] and related torts such as negligent training and hiring,'" *Clark*, 455 S.W.3d at 287 (alteration in original) (quoting *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n. 27 (Tex. 2010)). Nevertheless, the Supreme Court of Texas "has indicated that to recover on these theories, a plaintiff must show more than just negligent hiring practices." *Clark*, 455 S.W.3d at 287 (citing *Wansey v. Hole*, 379 S.W.3d 246, 247 (Tex. 2012) (per curiam)). "The plaintiff must also show she 'suffer[ed] some damages from the foreseeable misconduct of an employee' who was hired, supervised or retained pursuant to the defendant's negligent practices." *Clark*, 455 S.W.3d at 287 (quoting *Wansey*, 379 S.W.3d at 247).

The Court first addresses Johnson's direct negligence claims. The Parties brief the direct negligence claims against TAK and Victory jointly, so the Court addresses those claims, together. The Court then addresses Johnson's gross negligence claims.

## A.  Negligent Hiring

Defendants assert there is no evidence of a breach of a duty because neither Defendant had knowledge of Cox's alleged incompetence. In response, Johnson argues Defendants had some knowledge of Cox's lack of competency and that Cox was not road tested prior to driving for Defendants.

To recover under a theory of negligent hiring, a plaintiff must show:

> "**(1)** a duty to hire . . . competent employees; **(2)** an employer's breach of the duty; and **(3)** the employer's breach of the duty proximately caused the damages sued for."

*Greene v. W&W Energy Servs., Inc.*, No. 4:19-CV-4343, 2021 WL 5155675, at *4 (S.D. Tex. Feb. 5, 2021) (emphasis added in bold) (quoting *THI of Tex. at Lubbock I, LLC v. Perea*, 329 S.W.3d 548, 573 (Tex. App.—Amarillo 2010, pet. denied)); *see generally Texas & P. Ry. Co. v. Johnson*, 89 Tex. 519, 522, 35 S.W. 1042, 1043 (1896) (discussing the element regarding competency, generally).[1] Another sister court explained:

> Although the employer's awareness of the incompetency or fitness of the employee is not an "express element" of a negligent hiring or retention claim,[] one way a plaintiff may demonstrate breach is "if the employer hires [or retains] an incompetent or unfit employee whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others." *TXI Transp. Co. v. Hughes*, 224 S.W.3d 870, 901–02 (Tex. App.—Fort Worth 2007), *rev'd on other grounds*, 306 S.W.3d 230 (Tex. 2010).

*Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 647 (S.D. Tex. 2016) (footnote omitted). "Texas courts have noted that proof of one previous traffic violation is 'grossly

---

[1] *See also generally Gordon v. Bank of Am. Corp. & Green Tree Servicing*, LLC, No. 3:15-CV-902-L, 2015 WL 5872659, at *7 (N.D. Tex. Oct. 5, 2015) (quoting *TXI Transp. Co. v. Hughes*, 224 S.W.3d 870, 901 (Tex. App. —Fort Worth 2007), *rev'd on other grounds*, 306 S.W.3d 230 (Tex. 2010)) (discussing elements for negligent hiring); *see, e.g., Rhine v. First Baptist Dallas Church*, No. 3:14-CV-3055-M-BH, 2016 WL 6471941, at *5 (N.D. Tex. Oct. 4, 2016), report and recommendation adopted, No. 3:14-CV-3055-M, 2016 WL 6436335 (N.D. Tex. Oct. 31, 2016) (discussing elements for negligent hiring).

inadequate to establish a driver's incompetency or recklessness.'" *Ruelas v. W. Truck & Trailer Maint. Inc.*, No. PE:18-CV-2-DC, 2019 WL 4060891, at *4 (W.D. Tex. June 6, 2019) (quoting *Mireles v. Ashley*, 201 S.W.3d 779, 783 (Tex. App.—Amarillo 2006) (internal citation omitted)). "[W]here there is no evidence that a driver's past driving performance was such that a prudent person, considering the safety of others on the highways, would deny the driver access to an automobile, then the evidence is insufficient to establish incompetency or recklessness." *Phillips*, 189 F. Supp. 3d at 653 (addressing negligent hiring and negligent entrustment claims in the summary judgment context) (internal citation omitted).

Here, the record contains no evidence of any prior incidents of Cox as a commercial driver. The record further shows TAK and Victory investigated Cox before hiring him by, *inter alia*, confirming Cox had a commercial driver's license, performing a background check, confirming his insurance was approved, performing a safety test with Cox, and reviewing Cox's driving history (motor vehicle record). (*See* ECF No. 29 at 4-54). Johnson asserts that Cox had not driven commercially in the five years preceding the incident, but no evidence in the record supports this assertion.[2] Johnson asserts Cox's personal driving license was suspended "a . . . couple of different times" in Georgia in 1990, but no competent evidence in the record supports this assertion as this discussion stems from Johnson's counsel's questioning during Zembel's deposition. (ECF No. 43 at 5-6). Furthermore, when asked in hypothetical about the alleged suspension, Zembel testified that he had no knowledge of Cox's personal driver's license suspension. (ECF No. 43 at 5-6).[3] On

[2] The only discussion in the record regarding the allegation—that Cox had not driven commercially in the preceding five years—is derived from Johnson's counsel's question during deposition. No factual basis of this allegation exists in the record.

[3] The deposition record suggests Johnson's Counsel and Zembel were looking at a document, but no such document or other record of Cox's alleged 1990 license suspension(s) exists in summary judgment evidence. (*See* ECF No. 43 at 6).

MEMORANDUM OPINION AND ORDER                                    Page **9** of **20**

this record, there is no evidence that either TAK or Victory breached its respective duty to hire competent employees. The evidence in the record is not such that a jury could reasonably find in Johnson's favor. *Anderson*, 477 U.S. at 248. Thus, the Court GRANTS summary judgment in favor of Defendants on Johnson's negligent hiring claim. *See Little*, 37 F.3d at 1075.

### B. Negligent Entrustment

Defendants assert—similar to their negligent hiring argument(s)—that there is no sufficient evidence in the record to show Cox was incompetent as (i) his two prior tickets were in 1989 and 2016 and (ii) his criminal conviction was unrelated to the operation of a vehicle. (ECF No. 53 at 3-4). In response, Johnson relies on evidence (i) that neither TAK nor Victory road tested Cox and (ii) that Cox believed he should not have been driving to prevent the crash to show Cox was incompetent. (ECF No. 42 at 10-11).

To recover under a theory of negligent entrustment, a plaintiff is required to show

> **(1)** entrustment of a vehicle by the owner; **(2)** to an unlicensed, incompetent, or reckless driver; **(3)** that the owner knew or should have known to be unlicensed, **(4)** that the driver was negligent on the occasion in question and **(5)** that the driver's negligence proximately caused the accident.

*Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987) (emphasis added in bold); *see, e.g.*, *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007) (applying the same). "For entrustment to be a proximate cause, the defendant entrustor should be shown to be reasonably able to anticipate that an injury would result as a natural and probable consequence of the entrustment." *Schneider*, 744 S.W.2d at 596 (internal citation omitted). Entrustment liability "rests upon the combined negligence of the owner in entrusting the vehicle to an incompetent or reckless driver and negligence of the driver." *Schneider*, 744 S.W.2d at 596-97; *see McDorman ex rel. Connelly v. Texas-Cola Leasing Co. LP, LLP*, 288 F. Supp. 2d 796, 806 (N.D. Tex. 2003) ("Knowledge of the driver's incompetency at the time of the entrustment is an

essential element to establish negligence.") (internal citation omitted). "Decisions that have found evidence of recklessness and incompetence involve frequent and recent citations or driving incidents." *Ruelas*, 2019 WL 4060891, at *6.

Here, there is no competent evidence that Cox was incompetent, unlicensed, or reckless.[4] The Court pretermits further discussion of the elements of this claim as unnecessary. On this record, the evidence is not such that a jury could reasonably find in Johnson's favor. *Anderson*, 477 U.S. at 248. The Court GRANTS summary judgment in favor of Defendants on Johnson's negligent entrustment claim. *See Little*, 37 F.3d at 1075.

### C. Negligent Retention

Defendants argue there is no evidence that TAK or Victory retained Cox as an "incompetent employee who Defendants knew or should have known was incompetent or unfit for the job." (ECF No. 28 at 14). Johnson argues Defendants negligently retained Cox because they continued to employ Cox after he missed questions on a safety test that TAK administered to Cox. (ECF No. 42 at 12).

Both Parties refer to *Porter v. Nemir*, 900 S.W.2d 376, 385 (Tex. App.—Austin 1995, no writ) to describe the elements for a negligent retention claim. The Austin Court of Appeals states:

> **Negligent retention involves "the master's own negligence in . . . retaining in his employ an *incompetent* servant whom the master knows or by the exercise of reasonable care *should have known* was *incompetent* or *unfit*."** *Estate of Arrington,* 578 S.W.2d at 178; *see Doe v. Boys Clubs of Greater Dallas, Inc.,* 868 S.W.2d 942, 950 (Tex.App.—Amarillo 1994, writ granted) (claim for negligent hiring/retention requires harm to be a result of employment). The threshold inquiry in a negligent retention case involves duty, which is a question of law for the trial court to decide from the facts surrounding the incident in question. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990).

---

[4] In her argument as to this point, Johnson again refers to the unsupported allegation that Cox had not driven commercially in the preceding five years.

---

*Porter*, 900 S.W.2d at 385 (emphasis added in bold and bold italics).

Here, there is no evidence that TAK or Victory knew Cox to be incompetent as a commercial driver. The record is devoid of evidence that Cox was incompetent or unfit. Johnson's briefing avers Cox "performed poorly" on TAK's safety test, (ECF No. 42 at 12), but the record shows the test included at least sixty questions and Cox erred on about three of those questions. (ECF No. 43 at 20-23). It is unclear from the record the importance of those questions or what those questions asked as evidence of the actual safety test is not in the record. Notwithstanding the above, it is undisputed that Victory discharged Cox soon after the September 20, 2019 incident occurred. On this record, the evidence is not such that a jury could reasonably find in Johnson's favor. *Anderson*, 477 U.S. at 248. The Court GRANTS summary judgment in favor of Defendants on Johnson's negligent retention claim. *See Little*, 37 F.3d at 1075.

### D.  Negligent Training and Negligent Supervision

The Court addresses these claims, together. Both Defendants and Plaintiff assert similar arguments to those found in their briefing for negligent hiring, retention, and entrustment. Defendants assert there is no evidence TAK or Victory "knew of Cox's lack of fitness or dangerous tendencies." (ECF No. 28 at 14-15). In response, Johnson (i) reiterates her argument that TAK and Victory did not road test Cox and (ii) refers to a report from purported expert Linda Day that relates to the "standard of care for motor carriers." (*See* ECF No. 42 at 12-13; ECF No. 43 at 43-74).

"To support a claim for negligent training and supervision, a plaintiff must prove that a reasonably prudent employer would have provided training and supervision beyond that which was given and the failure to do so caused his injuries." *Lermon v. Minyard Food Stores, Inc.*, No. 05-13-34-CV, 2014 WL 6466840, at *8 (Tex. App.—Dallas 2014) (internal citations omitted); *see, e.g.*, *Alternatives Unlimited, Inc. v. Grp. Excellence, Ltd.*, No. 3:10-CV-02283-BF, 2012 WL

715970, at *7 (N.D. Tex. Mar. 5, 2012) (addressing negligent supervision claim). "An employer who knows of an employee's lack of fitness or dangerous tendencies may be held liable for injuries as a consequence of negligent retention or negligent supervision." *Capece v. Navisite, Inc.*, No. 03-02-00113-CV, 2002 WL 31769032, at *6 (Tex. App.—Austin 2002) (citing *Guidry v. Nat'l Freight, Inc.*, 944 S.W.2d 807, 810 (Tex. App.—Austin 1997). The Texas Supreme Court has discussed in parenthetical: "the negligence in hiring, [training, or supervising] must be the proximate cause of the injuries to the plaintiff." *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 842 (Tex. 2018) (quoting in parenthetical *LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 137 (Tex. App.—Amarillo 1997, writ denied) (capitalization bracket omitted, bracketed language in original).

Here, the record is devoid of evidence that Cox lacked fitness to drive commercially or otherwise held any dangerous tendencies. There is no evidence that Cox was speeding before the accident. In light of the record before the Court, the evidence that TAK and Victory did not give Cox a road test[5] is not evidence sufficient to generate a genuine issue of material fact as to whether failure to provide such a road test caused Johnson's injuries.

Although Johnson attaches evidence of an alleged expert report, the Court declines to consider the report as summary judgment evidence. In their reply, Defendants object to the report as unauthenticated and comprised of hearsay, conclusory statements, and conclusions of law. "Unsworn expert reports [] do not qualify as affidavits or otherwise admissible evidence for [the] purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment." *Provident Life & Acc. Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001) (internal quotation omitted); *see Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191 (5th Cir. 1991)

---

[5] It is unclear from the record whether the road test would have been before hiring or after hiring.

(unauthenticated letter was not competent summary judgment evidence, as such a document was not admissible). "The Fifth Circuit has repeatedly rejected efforts to oppose summary judgment with improper documents." *Mendel Kaliff Co. v. Haas & Wilkerson, Inc.*, No. SA-09-CA-926-FB, 2010 WL 11601450, at *4 (W.D. Tex. Aug. 9, 2010) (collecting cases).

> Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994) ..... "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

*Appel v. Inspire Pharms., Inc.*, 712 F. Supp. 2d 538, 542 (N.D. Tex. 2010), *aff'd*, 428 F. App'x 279 (5th Cir. 2011). Here, the report (i) is not properly authenticated and (ii) contains largely conclusory allegations. (ECF No. 43 at 43-74). Thus, the report is not competent summary judgment, and the Court grants Defendants' corresponding objection. The Court does not consider the report as summary judgment evidence.

The record shows Cox was previously trained in operating a commercial vehicle and had about 14 years of experience in driving. The record shows Cox remembered the CDL training on how to avoid a crash. (ECF No. 29 at 22). It is further undisputed that Mr. Hibbert rode along with Cox as supervisor for almost the entirety of his work at Victory and TAK, including during the accident. (ECF No. 29 at 15; ECF No. 43 at 11). The record shows TAK further supervised his driving through log books and tracking his driving. Here, the evidence is not such that a jury could reasonably find in Johnson's favor. *Anderson*, 477 U.S. at 248. The Court GRANTS summary judgment in favor of Defendants on Johnson's negligent training and negligent supervision claims. *See Little*, 37 F.3d at 1075.

### E.  Negligent Qualification

As with several of the direct negligence claims Johnson has pled against TAK and Victory, the Texas Supreme Court has not ruled definitely on the existence, elements, and scope of a negligent qualification claim. *See Clark*, 455 S.W.3d at 287; *see, e.g., Lugo-Gonzales v. C.R. England, Inc.*, No. 1:17-CV-073, 2018 WL 2321903, at *2 n.1 (S.D. Tex. Mar. 13, 2018) (determining "negligent qualification" as another way to state a negligent hiring claim).[6] Therefore, the Court dismisses the claim for "negligent qualification" as it does not appear to be a valid cause of action in Texas. Presumably, if this cause of action does exist, it would only be a different way of stating a cause of action for negligent hiring or negligent entrustment. As determined above, both of those claims are foreclosed due to lack of evidence on at least one element of those respective claims. Thus, to the extent that a "negligent qualification" claim exists, such a claim would be dismissed for the same reasons the Court dismissed Johnson's negligent hiring and negligent entrustment claims, hereabove.

### F.  Gross Negligence

"Gross negligence is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected." *In re Schooler*, 725 F.3d 498, 511–12 (5th Cir. 2013) (internal quotation omitted). The Texas Supreme Court has explained that gross negligence requires a showing of two elements:

---

[6] Specifically, our sister court explained:

> The Court is unable to find Texas case law supporting a cause of action for "negligent qualification," and plaintiff fails to provide authority for this claim. Therefore, the Court will dismiss it as it does not appear to be a valid cause of action in Texas. Presumably, if this cause of action does exist, it would only be a different way of stating a cause of action for negligent hiring.

*Lugo-Gonzales v. C.R. England, Inc.*, No. 1:17-CV-073, 2018 WL 2321903, at *2 n.1 (S.D. Tex. Mar. 13, 2018).

---

**(1)** viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and **(2)** the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed[s] in conscious indifference to the rights, safety, or welfare of others.

. . .

Under the first, objective element, an extreme risk is "not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921 (Tex.1998). Under the subjective element, "actual awareness means the defendant knew about the peril, but its acts or omissions demonstrated that it did not care." *Id.* Circumstantial evidence may suffice to prove either element. *Id.*

*Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (quoting *Harrison,* 70 S.W.3d at 785) (emphasis added in bold) (internal citations omitted). Texas has codified these two elements in Texas Civil Practice and Remedies Code § 41.001(11)(A-B). "Evidence of simple negligence is not enough to prove either the objective or subjective elements of gross negligence." *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). The Parties brief gross negligence separately as it relates to (i) Cox and (ii) TAK and Victory, so the Court addresses gross negligence as to each of these Defendants, separately.

  i. *Gross Negligence as to Cox*

  Defendants assert there is no evidence of Cox's gross negligence. In response, Johnson refers the Court to evidence (i) that Cox admitted he was too close to Johnson's vehicle, should have been paying closer attention, and should have been paying closer attention; and (ii) that Cox believed he should not have been driving at the time of the accident.

  Defendants rely heavily on *Medina v. Zuniga*, 593 S.W.3d 238, 241 (Tex. 2019)—wherein the Texas Supreme Court addressed gross negligence in a collision context. In that case, plaintiff Medina was stopped on an entrance drive to a school parking lot, blocking entrance to the lot. *Medina,* 593 S.W.3d at 242. A driver pulled in behind Medina and honked at him. Medina briefly reversed his vehicle in attempt to "mess with" the other driver, and then he drove forward. *Medina,*

593 S.W.3d at 242. In driving forward, Medina "accelerated rapidly . . . reaching a top speed of 24 miles per hour. To reach that speed in such a short distance . . . Medina must have pressed the accelerator almost to the floor." *Medina*, 593 S.W.3d at 242. Medina then decreased his speed—suggested to 19 miles per hour—as he approached the exit driveway, but Medina did not stop. *Medina*, 593 S.W.3d at 242. "Medina testified he looked left before exiting but conceded he failed to look right. He saw Zuniga only momentarily before he struck her as he pulled onto the street." *Medina*, 593 S.W.3d at 242. *Inter alia*, the Texas Supreme Court reviewed the following evidence relating to gross negligence:

> • Medina decreased his speed to approximately 19 miles per hour as he approached the parking lot exit, but did not stop at the exit and looked only to his left before exiting and striking Zuniga, who was approaching from the right.
>
> • Although Medina attempted to brake prior to impact, he effectively braked after the impact.
>
> • A video taken by a camera on the school campus showed Medina's entrance to the parking lot and his drive through the parking lot. Although the accident occurs outside the field of view, the video "showed the number of people in the area," and "Medina testified he was aware other people were on campus, primarily to feed livestock as part of an agricultural program."
>
> • Photographs from the accident scene showed Medina's right rear tire came to rest on the sidewalk, and Zuniga's accident reconstructionist testified Medina drove on the sidewalk as he exited.

*Medina*, 593 S.W.3d at 248 (bullet points in original). In viewing the evidence "in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not[,]" the Texas Supreme Court concluded that Medina's actions did not constitute gross negligence. *Medina*, 593 S.W.3d at 247, 250. The Texas Supreme Court explained:

> The objective gross-negligence standard must remain functionally distinguishable from ordinary negligence. As to the objective component, an "extreme degree of risk" is "a threshold significantly higher than the objective 'reasonable person' test for negligence." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex. 1994). "An

act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent." *Id.*

. . . .

Gross negligence can be supported only by an *extreme* degree of risk, not "a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Ellender*, 968 S.W.2d at 921.

*Medina*, 593 S.W.3d at 249. "Any of Medina's negligent acts here are common ingredients in a garden-variety car accident, whether involving a pedestrian or another vehicle. . . . [T]hose failures, even taken together, do not amount to gross negligence." *Medina*, 593 S.W.3d at 250. Johnson offers no briefing or response as it relates to *Medina v. Zuniga*. (*See* ECF No. 42).

Here, there is no evidence that supports either element of a gross negligence claim. As Defendants discuss generally, Johnson "has failed to show anything more than a general awareness of the dangers of driving a tractor/trailer vehicle and potential lack of attention or following the general road rules while operating such a vehicle." (ECF No. 28 at 21). Here, there is no evidence in the record that elevates the accident in this case above the kind of "garden-variety collision," which would preclude a gross negligence claim. *See Marr v. Croxton*, No. SA-21-CV-00961-XR, 2022 WL 2346622, at *3 (W.D. Tex. June 29, 2022) (discussing a collision involving a commercial vehicle). Furthermore, there is no evidence in the record that Cox's acts or omissions showed he did not care about the peril of a collision. To the contrary, it is undisputed that Cox was braking before collision. (ECF No. 43 at 13). For those reasons, the Court GRANTS summary judgment in favor of Defendants on Johnson's gross negligence claims against Cox.

> ii.    *Gross Negligence as to TAK and Victory*

"A corporation may not be held liable for punitive damages for gross negligence unless the corporation itself **(1)** commits gross negligence, **(2)** authorized or ratified an agent's gross negligence, **(3)** was grossly negligent in hiring an unfit agent, or **(4)** committed gross negligence

---

MEMORANDUM OPINION AND ORDER                                      Page **18** of **20**

through the actions or inactions of a vice-principal." *Phillips*, 189 F. Supp. 3d at 656 (emphasis added in bold).

In asserting that TAK and Victory committed gross negligence, Johnson relies on *Ruiz v. Minh Trucking, LLC*, No. 5:19-CV-1191-DAE, 2020 WL 8361992 (W.D. Tex. Dec. 3, 2020). However, *Ruiz* is inapposite to the case before the Court as, unlike in *Ruiz*: (i) Cox's license was never suspended; (ii) Cox had no citations while driving commercially and only two tickets while operating his personal vehicle; (iii) no evidence shows Cox was ever disqualified from driving a commercial vehicle; (iv) no evidence shows Cox lied about his medical exam results; (v) no evidence shows TAK or Victory failed any DOT inspections; (vi) no evidence shows TAK or Victory were noticed for violations or lack of safety controls; and the single speeding and reckless driving citation against Cox was dismissed, (ECF No. 43 at 41; ECF No. 29 at 24).

Because the Court already concluded Cox was not grossly negligent, Defendants TAK and Victory cannot have authorized or ratified grossly negligent conduct by Cox to be liable under the second theory. Next, because the Court concluded that summary judgment is proper as to Johnson's claims for negligent hiring, entrustment, retention, training and supervision, and qualification claims against TAK and Victory, Johnson's gross negligence claims against TAK and Victory on those grounds likewise fail. *See Phillips*, 189 F. Supp. 3d at 657 (granting summary judgment on gross negligence claim(s) under similar circumstances). Assuming *arguendo* that such claims survived, the Court must find and conclude that there is no evidence that TAK or Victory were grossly negligent in hiring, entrusting, retaining, training, supervising, or qualifying as it relates to Cox.

Johnson next avers TAK and Victory "pass[ed] the buck" in relation to qualifying Cox, but Johnson refers the Court to no corresponding evidence. Johnson appears to suggest TAK and

Victory failed to qualify Cox, but the record shows TAK and Victory both took steps to qualify Cox to drive as a commercially licensed driver. Notwithstanding, Johnson fails to brief how such conduct—assuming it had occurred—would rise to the "extreme degree of risk" or constitute "lack of care." *See Boerjan*, 436 S.W.3d at 311; *Medina*, 593 S.W.3d at 249. Here, there is no evidence TAK or Victory committed any gross negligence. For those reasons, the Court GRANTS summary judgment in favor of Defendants on Johnson's gross negligence claims against TAK and Victory.

## IV.   CONCLUSION

For the reasons enumerated above, the Court GRANTS summary judgment in favor of Defendants. The Court hereby dismisses Johnson's direct negligence claims against both TAK and Victory—negligent hiring; negligent entrustment; negligent retention; negligent training; negligent supervision; and negligent qualification. The Court further dismisses Johnson's gross negligence claims against Cox, TAK and Victory.

**SO ORDERED.**

29th day of January, 2024.

ADA BROWN
UNITED STATES DISTRICT JUDGE